UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| BIANCA MARIE FELICIANO, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TOWN OF CICERO, Cicero Police | ) |
| Officers HARRIS, #241 and | ) |
| CALDERON, #291, | ) |
| | ) |
| Defendants. | ) Jury Demand |

# COMPLAINT

**JURISDICTION**

1. The jurisdiction of the court is invoked pursuant to the Civil Rights Act, 42 U.S.C. § 1983 et seq.; the Judicial Code, 28 U.S.C. §§ 1331 and 1343(a); the Constitution of the United States, including its First, Fourth and Fourteenth Amendments; and pendent and supplementary jurisdiction, pursuant to 28 U.S.C. § 1367.

**PARTIES**

2. Plaintiff Bianca Marie Feliciano, a Latina transgender woman, is a resident of the United States and the City of Chicago.

3. Defendant TOWN OF CICERO is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer of the Defendant Police Officers Scott Harris, #241 and Jose Calderon, #291.

4. Defendant Police Officers Harris and Calderon were, at the time of this occurrence, duly appointed Town of Cicero employees. Defendant Officers Harris and Calderon were engaged in the conduct complained of in the course and scope of their employment while on duty

working for the Cicero Police Department and the Town of Cicero.

5. At all times material to this complaint, Defendant Officers Harris and Calderon were acting under color of state law, ordinance, and/or regulation. Each is sued in his individual capacity.

**FACTS**

6. On February 6, 2011, Ms. Feliciano and her companion, who is an African American transgender female, were walking along the 1400 block of Cicero Avenue in Cicero, Illinois.

7. Ms. Feliciano and her companion were not violating any federal, state or local laws or ordinances.

8. As they were walking down the street, Defendant Officers Harris and Calderon stopped Ms. Feliciano and her companion.

9. The Defendant Officers informed Ms. Feliciano, and later stated in their police report, that they stopped Ms. Feliciano and her companion because they were in an area "known for a high concentration of prostitution related activity."

10. Upon information and belief, Defendant Officers Harris and Calderon stopped Ms. Feliciano and her companion, because they are transgender females and they illegally profiled Ms. Feliciano and her companion as sex workers based on their gender-identity.

11. Neither Ms. Feliciano nor her companion were engaged in any activity a reasonable person would believe indicated they was engaged in sex work.

12. After being stopped, Ms. Feliciano informed Defendant Officers Harris and Calderon that she and her companion were not prostitutes.

13. In response to Ms. Feliciano's statement, one of Defendant Officers said, "Don't

2

fucking lie to me."

14. Ms. Feliciano and her companion were then ordered by the Defendant Officers to approach the police vehicle.

15. As Ms. Feliciano and her companion complied with this order and approached the police vehicle, one of the Defendant Officers stated, "Hey look, two transsexuals."

16. The Defendant Officers asked Ms. Feliciano her name.

17. When Ms. Feliciano responded "Bianca Feliciano," one of the Defendant Officers said that was not her name and demanded she give him her identification card.

18. Ms. Feliciano then provided Defendant Officers Harris and Calderon with her State of Illinois identification card which properly indicated that her name is: "Bianca Feliciano" and her gender is female.

19. After looking at Ms. Feliciano's identification card, one of the Defendant Officers insulted Ms. Feliciano, challenging and denying her gender-identity and stating "You are not female, you have a dick between your legs."

20. As Ms. Feliciano tried to explain that she legally changed her name, one of the Defendant Officers told her not to talk back, threatened her with violence, and claimed that if she was properly disciplined and punished she would not be the way she is right now. She was then forced to reveal the name that she was given at birth that is no longer her name.

21. Ms. Feliciano was extremely upset by the Defendant Officers' actions, name calling and threats and was further humiliated by the Defendant Officers who were loud and making a scene on the street.

22. One of the Defendant Officers threatened to punch Ms. Feliciano, take her to jail, and to lock her up for fraud because her ID said she is female.

23. Defendant Officers proceeded to illegally search Ms. Feliciano's purse without probable cause or reasonable suspicion to do so.

24. Upon searching Ms. Feliciano's purse, Defendant Officers recovered a pack of cigarettes and a stone inside a sock.

25. Defendant Officers proceeded to formally arrest Ms. Feliciano and subsequently charged her with unlawful possession of tobacco by a minor and a "quasi uuw" in violation of Cicero Town ordinances.

26. One of the Defendant Officers then called for backup, stating that he needed another officer to take Ms. Feliciano and her companion to the station because, as the Defendant Officer stated, "I don't want them in the car."

27. At the station, prior to a more thorough search, Ms. Feliciano heard one of the Defendant Officers state, "They're men, they don't need no female cops," with respect to searching Ms. Feliciano and her female companion.

28. One of the Defendant Officers, who was male, searched the lower part of Ms. Feliciano's body, stating that he could conduct the search because "you still have a penis between your legs."

29. The same male officer said that a female officer would arrive to search Ms,. Feliciano's bra.

30. At the police station, numerous police officers made statements regarding Ms. Feliciano, such as: "Oh my God, it's a transsexual, this is insane," and "They have titties, but they're boys."

31. In response to these and other comments, Ms. Feliciano informed the officers that she had legally changed her name and identification.

32. Despite Ms. Feliciano's attempts to explain her gender-identity to the Cicero Police Officers, including Harris and Calderon, they repeatedly ridiculed and denied Ms. Feliciano's gender-identity by stating that she was a man, referring to her with male pronouns, and calling her by her former name: Anthony.

33. Defendant Police Officers Harris and Calderon continued to knowingly and discriminatorily deny Ms. Feliciano's gender-identity when completing the general report and tickets, stating that her name was "Anthony Feliciano."

34. Defendants officers made out false and incomplete official reports and gave a false and incomplete version of the events to their superiors to justify their initial stop, search and subsequent detention of Ms. Feliciano.

35. That night, Ms. Feliciano's mother came to the police station and showed the police officers' court documentation confirming that Ms. Feliciano had legally changed her name.

36. Despite being shown the legal documentation of Ms. Feliciano's name change, Defendant Police Officers refused to return Ms. Feliciano's identification card and to this day have failed to do so.

37. Defendant Officers Harris and Calderon claimed it was illegal for her identification to state she was female when she "still has a penis between her legs."

38. Ms. Feliciano subsequently had to get a new state identification card.

39. After Ms. Feliciano was released and forced to defend herself against ordinance violations brought against her by Defendant Officers Harris and Calderon, Ms. Feliciano brought a formal complaint against the Defendant Officers and the Town of Cicero alleging they discriminated against her on the basis of gender-identity in violation of the Illinois Human Rights Act, § 775 ILCS 5/1-101 *et seq.*

40. Subsequent to this formal complaint, Defendant Officers Harris and Calderon wrote an entirely new police report that included false and fabricated allegations of their encounter and interactions with Ms. Feliciano in order to cover up their illegal, discriminatory and unconstitutional treatment of Ms. Feliciano and avoid any discipline or liability for violating her rights guaranteed under the United States Constitution and Illinois law.

41. As a result of the Defendants' unlawful conduct, Ms. Feliciano suffered severe emotional distress, mental anguish, and humiliation which caused her to seek emotional support from counselors and other service providers.

## COUNT I
### [42 U.S.C. § 1983 Claim for Illegal Search and Seizure]

42. Plaintiff re-alleges paragraphs 1 through 41.

43. The actions of Defendant Officers Harris and Calderon in stopping and detaining Ms. Feliciano on the 1400 block of Cicero in Cicero, Illinois without probable cause, reasonable suspicion or legal justification to do so, violated Plaintiff's Fourth Amendment right to be free from an unreasonable seizure guaranteed under the U.S. Constitution and thus violated her rights guaranteed under 42 U.S.C. § 1983.

44. The actions of Defendant Officers Harris and Calderon in searching Plaintiff Feliciano's person and purse without probable cause or reasonable suspicion to do so, and for failing to prevent said search despite the ability to do so, violated Plaintiff's Fourth Amendment right to be free from an unreasonable search guaranteed under the U.S. Constitution and thus violated her rights guaranteed under 42 U.S.C. § 1983.

45. The aforementioned actions of Defendant Officers Harris and Calderon were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's suffering, severe emotional distress, mental anguish, humiliation, and loss of liberty.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands compensatory damages, jointly and severally, from Defendant Officers Harris and Calderon. Additionally, because these Defendant Officers acted maliciously, willfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff demands punitive damages from these Defendant Officers. Plaintiff also demands costs and attorneys' fees and whatever additional relief this Court deems equitable and just.

### COUNT II
### [42 U.S.C. § 1983 Claim for Violation of the Equal Protection Clause]

46. Plaintiff re-alleges paragraphs 1 through 41.

47. The actions of Defendant Officers Harris and Calderon in profiling the Plaintiff as a sex worker because of her gender-identity were not substantially related to any sufficient government interest and constitute gender-based discrimination in violation of the Plaintiff's right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and thus violated 42 U.S.C. § 1983.

48. The actions of Defendant Officers Harris and Calderon in exhibiting gender-based animus, using sexually derogatory language, and humiliating the Plaintiff because of her gender-identity, were not substantially related to any sufficient government interest and constitute gender-based discrimination in violation of the Plaintiff's right to equal protection of the laws guaranteed by the Fourteenth Amendment to the United States Constitution and thus violated 42 U.S.C. § 1983.

49. The aforementioned actions of Defendant Officers Harris and Calderon were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's suffering, severe emotional distress, mental anguish, humiliation, and loss of liberty.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands compensatory damages,

jointly and severally, from Defendant Officers Harris and Calderon. Additionally, because these Defendant Officers acted maliciously, willfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff demands punitive damages from these Defendant Officers. Plaintiff also demands costs and attorneys' fees and whatever additional relief this Court deems equitable and just.

## COUNT III
### [42 U.S.C. § 1983 Claim for Violation of Freedom of Expression]

50. Plaintiff re-alleges paragraphs 1 through 41.

51. The actions of Defendant Officers Harris and Calderon in profiling the Plaintiff as a sex worker because of her gender-identity, were not substantially related to any sufficient government interest and constitute gender-based discrimination in violation of the Plaintiff's right to freedom of expression guaranteed by the First Amendment to the United States Constitution and thus violated 42 U.S.C. § 1983.

52. The actions of Defendant Officers Harris and Calderon in exhibiting gender-based animus, using sexually derogatory language, and humiliating the Plaintiff because of her gender-identity, were not substantially related to any sufficient government interest and constitute gender-based discrimination in violation of the Plaintiff's right to freedom of expression guaranteed by the First Amendment to the United States Constitution and thus violated 42 U.S.C. § 1983.

53. The aforementioned actions of Defendant Officers Harris and Calderon were the direct and proximate cause of the constitutional violations set forth above and of Plaintiff's suffering, severe emotional distress, mental anguish, humiliation, and loss of liberty.

WHEREFORE, pursuant to 42 U.S.C. § 1983, Plaintiff demands compensatory damages, jointly and severally, from Defendant Officers Harris and Calderon. Additionally, because these

Defendant Officers acted maliciously, willfully, wantonly, and/or in reckless disregard for the Plaintiff's constitutional rights, Plaintiff demands punitive damages from these Defendant Officers. Plaintiff also demands costs and attorneys' fees and whatever additional relief this Court deems equitable and just.

## COUNT IV
### [42 U.S.C. § 1983 *Monell* Policy Claim Against Defendant Town of Cicero]

54. Plaintiff re-alleges paragraphs 1 through 53.

55. The actions of defendants Harris and Calderon, as alleged above, were done pursuant to one or more interrelated *de facto* policies, practices and/or customs of the Town of Cicero, its police department, its Village Board or its Chief of police.

56. At all times material to this complaint, the defendant Town of Cicero and its police department had interrelated *de facto* policies, practices, and customs which included, *inter alia*, the failure to properly hire, train, supervise, discipline, transfer, monitor, and counsel its police officers regarding their interactions with and treatment of transgender and gender-nonconforming people.

57. The Cicero Police Department has no written policies or training materials with respect to gender-identity or gender-identity expression and the Town of Cicero and its police department fails to provide its police officers with any guidance as how to respectfully interact, stop, arrest, search and/or detain transgender or gender non-conforming people.

58. The *de facto* policies, practices and customs of failing to hire, train, supervise, monitor, discipline, and counsel Cicero Police Officers allow Cicero Police Officers to treat transgender and gender non-conforming people in abusive, hostile,

threatening, and discriminatory ways in violation of the U.S. Constitution and Illinois law.

59. The aforementioned policies, practices and/or customs of failing to hire, supervise, discipline, monitor, and counsel Cicero Police Officers proximately caused injury to the Plaintiff in this case, *inter alia*, because Defendants had good reason to believe that their misconduct would not be revealed or reported by fellow officers or their supervisors, that their denials would go unchallenged by these supervisors and fellow officers, and that they were effectively immune from disciplinary action, thereby protecting them from the consequences of their unconstitutional and illegal conduct.

60. But for the belief that each of them would be protected by fellow officers, supervisors, the Cicerto Police Department and/or the Town of Cicero, from serious career consequences as a result of their misconduct, defendants Harris and Calderon would not have engaged in the conduct that resulted in the injuries to the Plaintiff.

61. Said interrelated policies, practices and customs, as set forth above, both individually and together, were maintained and implemented with deliberate indifference, and encouraged the Defendants to commit the aforesaid acts against Plaintiff and therefore acted as the moving force and were, separately and together, direct and proximate causes of said constitutional violations, and injuries to Plaintiff.

62. These policies, practices and customs encouraged, *inter alia*, police misconduct, including, but not limited to, the false detention, search and arrest of transgender and gender non-conforming people, the harassment and discriminatory treatment of transgender and gender non-conforming people, the fabrication of police reports and charges, the fabrication of evidence, the making of false statements and

10

reports, and were, separately and together, the moving force and a direct and proximate cause of the unconstitutional acts committed by defendants Harris and Calderon, in this case and the injuries sustained by Plaintiff.

WHEREFORE, Plaintiff demands judgment against defendant Town of Cicero for compensatory damages, plus costs and attorneys' fees and whatever additional relief this Court finds equitable and just.

## COUNT V
### [Pendent State Law Claim for Intentional Infliction of Emotional Distress]

63. Plaintiff re-alleges paragraphs 1 through 41.

64. The conduct and actions of Defendant Officers Harris and Calderon as set forth above, were extreme and outrageous, were done intentionally, willfully and wantonly, and/or knowing there was a high probability that their conduct would cause Plaintiff severe emotional distress as set forth above.

65. As a direct and proximate result of Defendant Officers Harris and Calderon's extreme and outrageous conduct, Plaintiff was injured and experienced severe emotional distress, mental anguish, and humiliation constituting intentional infliction of emotional distress under Illinois state law.

WHEREFORE, Plaintiff demands compensatory damages against Defendant Officers Harris and Calderon plus the costs of this action and such other and additional relief as this Court deems equitable and just.

## COUNT VI
### [Claim for *Respondeat Superior* Against Defendant Town of Cicero]

66. Plaintiff re-alleges paragraphs 1 through 41 and 63 through 65.

67. Defendant Officers Harris and Calderon were, at all times material to this complaint,

employees of the Defendant Town of Cicero, were acting in the scope of their employment, and their acts, which violated state law, are directly chargeable to Defendant Town of Cicero under state law pursuant to *respondeat superior*.

WHEREFORE, Plaintiff demands judgment for compensatory damages against the Town of Cicero, plus the costs of this action and whatever additional relief this Court deems equitable and just.

### COUNT VII
### [745 ILCS 10/9-102 Claim Against Defendant Town of Cicero]

68. Plaintiff re-alleges paragraphs 1 through 67.

69. Defendant Town of Cicero was the employer of Defendant Officers Harris and Calderon at all times relevant to this complaint.

70. Defendant Officers Harris and Calderon committed the acts alleged above in the scope of their employment as employees of the Town of Cicero.

WHEREFORE, pursuant to 745 ILCS 10/9-102, Plaintiff demands judgment against the Defendant Town of Cicero in the amount awarded to Plaintiff against any and all Defendants as damages, attorney's fees, costs and interest, and/or for any settlement entered into between the Plaintiff and any Defendant and for whatever additional relief this Court deems equitable and just.

Dated: February 6, 2012

Respectfully submitted,

/s/ Joey L. Mogul
Joey L. Mogul
People's Law Office
1180 N. Milwaukee Ave.
Chicago, Illinois 60642-4019
773.235.0070
Attorney for the Plaintiff

**Plaintiff demands a jury trial on each and every count of this Complaint**